IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01450-RPM-BNB

CROCS, INC. a Delaware corporation,

       Plaintiff,

    v.

SKECHERS U.S.A., Inc., a Delaware corporation,

       Defendant.

---

**ANSWER AND COUNTERCLAIMS OF
DEFENDANT SKECHERS U.S.A., INC.**

---

## ANSWER OF SKECHERS U.S.A., INC.

Defendant SKECHERS U.S.A., Inc. ("Skechers") answers the Complaint of Crocs, Inc. ("Crocs") as follows:

## NATURE OF ACTION

1.      Skechers admits that this purports to be an action at law and in equity for patent infringement, trade dress infringement, injury to business reputation, unfair competition, and deceptive trade practices, arising under the Patent Act, 35 U.S.C.§§ 1, *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105, *et seq.*, and common law, but denies liability under any such claim or statute.  Skechers denies that this is an action for trade dress dilution.

2.      Skechers denies that it is offering for sale and selling footwear that bears confusingly similar imitations of Crocs' patents, trademarks and trade dress. Skechers denies that Crocs' alleged footwear designs are original.  Skechers admits that its footwear is not manufactured by Crocs and admits that Skechers is not connected or affiliated with, or authorized by, Crocs in any way, but denies that any connection, affiliation or authorization by Crocs is required.  Skechers denies the remaining allegations of Paragraph 2.

## PARTIES, JURISDICTION AND VENUE

3.      Skechers is without information sufficient to form a belief as to the truth of the allegations of Paragraph 3 and therefore denies the same.

4.      Skechers admits the allegations of Paragraph 4.

5.     Skechers admits that the Court has subject matter jurisdiction over the federal claims in this case, but denies that the federal questions are well-pleaded or that this Court should exercise jurisdiction over the supplemental state claims.

6.     Skechers does not contest *in personam* jurisdiction in this case.

7.     Skechers admits that it advertises, offers for sale, sells, and distributes a wide-variety of footwear and accessories throughout the United States, including within the State of Colorado.  It further admits that of its approximately 2,000 models of shoes, some could be characterized as "foam clog footwear" and that some of the accessories it offers could be characterized as "accessories for foam clog footwear."

8.     Skechers denies that events or omissions occurred supporting Crocs' claims, but does not contest venue.

## GENERAL ALLEGATIONS
## CROCS, INC.

9.     Skechers denies that Crocs is a rapidly growing designer, manufacturer and marketer of Crocs branded footwear for men, women and children, and denies that Croslite is proprietary to Crocs or is Crocs' "innovation."  Skechers admits that the material from which the Crocs shoes are made provides functionality and is lightweight and admits that Crocs offers a number of models in a wide variety of colors.  Skechers is without information sufficient to form a belief as to the remaining allegations of Paragraph 9 and therefore denies the same.

10.     Skechers is without information sufficient to form a belief as to the allegations of Paragraph 10 and therefore denies the same.

11.     Skechers admits that Crocs footwear is currently sold through a wide range of distribution channels, including department stores, specialty footwear stores, sporting goods and outdoor retailers.  Skechers is without information sufficient to form a belief as to the remaining allegations of Paragraph 11 and therefore denies the same.

## THE CROCS DESIGN MARK

12.     Skechers denies that Crocs has distinctive shoe designs.  Skechers is without information sufficient to form a belief as to the remaining allegations of Paragraph 12 and therefore denies the same.

13.     Skechers denies that the Crocs Logo is arbitrary and fanciful.  Skechers admits that a picture of Crocs' alleged Crocs Logo is depicted in Paragraph 13.  Skechers is without information sufficient to form a belief as to the remaining allegations of Paragraph 13 and therefore denies the same.

## THE CROCS DESIGN PATENTS

14.     Skechers admits that on March 28, 2006, the U.S. Patent and Trademark Office ("PTO") issued U.S. Patent No. D 517,789, entitled "Footwear," with Crocs as the assignee, and admits that what purports to be a true and correct copy of the '789 patent is attached to the Complaint as Exhibit A, but is without information sufficient to form a belief as to the authenticity of Exhibit A and therefore denies the same.

15.     Skechers admits the allegations of Paragraph 15.

16.     Skechers admits that on March 18, 2008, the PTO issued U.S. Patent No. D 564,208, entitled "Footwear," with Crocs as the assignee, and admits that what

purports to be a true and correct copy of the '208 patent is attached to the Complaint as Exhibit B, but is without information sufficient to form a belief as to the authenticity of Exhibit B and therefore denies the same.

17. Skechers admits the allegations of Paragraph 17.

18. Skechers admits that on March 18, 2008, the PTO issued U.S. Patent No. D 564,207, entitled "Footwear," with Crocs as the assignee, and admits that what purports to be a true and correct copy of the '207 patent is attached to the Complaint as Exhibit C, but is without information sufficient to form a belief as to the authenticity of Exhibit C and therefore denies the same.

19. Skechers admits the allegations of Paragraph 19.

## THE CROCS [ALLEGED] TRADE DRESS

20. Skechers denies that there is any "Crocs Trade Dress" in the footwear alleged and further denies the remaining allegations of Paragraph 20.

21. Skechers denies that there is any "Crocs Trade Dress" in the footwear alleged and denies that any Crocs footwear alleged has an overall look and feel; denies that the alleged "specific elements" listed (or "one or more" of them) are cognizable as trade dress; and denies all the remaining allegations of Paragraph 21.

22. Skechers denies that there is any "Crocs Trade Dress" in the footwear alleged and further denies the remaining allegations of Paragraph 22.

23. Skechers denies that there is any "Crocs Trade Dress" in the footwear alleged and further denies the remaining allegations of Paragraph 23.

24.     Skechers admits that Crocs sells its footwear through a wide range of distribution channels.  Skechers denies that Crocs' footwear products have a unique appearance; denies that there is any "Crocs Trade Dress" in the footwear alleged; and denies that Crocs' footwear products' appearance showcases any alleged trade dress.  Skechers is without information sufficient to form a belief as to the remaining allegations of Paragraph 24 and therefore denies the same.

25.     Skechers denies that there is any "Crocs Trade Dress" in the footwear alleged and denies that there is strong recognition of any alleged trade dress as an indicator of source.  Skechers is without information sufficient to form a belief as to the remaining allegations of Paragraph 25 and therefore denies the same.

26.     Skechers denies that there is any "Crocs Trade Dress" in the footwear alleged; denies that Crocs has had exclusive use of any alleged trade dress in connection with its products; denies that any alleged trade dress enjoys wide public acceptance and association with Crocs; and denies that any alleged trade dress has come to be recognized widely and favorably by the public as an indicator of the origin of Crocs' goods.  Skechers is without information sufficient to form a belief as to the remaining allegations of Paragraph 26 and therefore denies the same.

27.     Skechers is without information sufficient to form a belief as to the allegations of Paragraph 27 and therefore denies the same.

28.     Skechers denies that there is any "Crocs Trade Dress" in the footwear alleged; denies any alleged trade dress is inherently distinctive; denies that the Crocs footwear has become well known throughout the United States as originating from Crocs; denies that Crocs intentionally created its alleged trade dress to distinguish its footwear from any other footwear and to indicate Crocs as its sole point of origin; and denies that no other manufacturer had used the trade dress alleged by

Crocs prior to its introduction into and success in the market by Crocs.  Skechers is without information sufficient to form a belief as to the remaining allegations of Paragraph 28 and therefore denies the same.

29.     Skechers denies the allegations of Paragraph 29.

## DEFENDANT'S [ALLEGED] INFRINGING ACTIVITIES

30.     Skechers admits that it manufactures, uses, offers for sale, sells, and/or imports a wide variety of footwear and accessories throughout the United States, including within the State of Colorado, and admits that some of its approximately 2,000 models of shoes could be characterized as "foam clog footwear" and that some of the accessories it offers could be characterized as "accessories for foam clog footwear."

31.     Skechers denies the allegations of Paragraph 31.

32.     Skechers admits that its products include the Skechers Products identified and pictured in Paragraph 32, but Skechers denies the remaining allegations of Paragraph 32, including the allegation that the listed Skechers Products imitate Crocs products.

33.     Skechers admits that the footwear manufactured, used, offered for sale, sold, and/or imported by Skechers is not manufactured by Crocs, nor is Skechers associated or connected with Crocs, or licensed, authorized, sponsored, endorsed or approved by Crocs in any way, but denies that any connection, affiliation or authorization by Crocs is required for manufacture, use, offer for sale, sale, and/or import of Skechers footwear.

34.     Skechers admits that it uses its CALI BEAR Logo on some of the Skechers Products identified in Crocs' Complaint; admits that a picture of its logo is depicted in Paragraph 34; and admits that in connection with certain models of its footwear that could be characterized as foam clog footwear, its CALI BEAR Logo is used in a functional location, namely, on a circular rivet connecting a strap to the upper and in a black and white color scheme.  Skechers denies that the CALI BEAR Logo is confusingly similar to the Crocs Logo and denies the remaining allegations of Paragraph 34.

35.     Skechers admits that some of the goods sold by Skechers compete with the goods sold by Crocs and admits that some of these goods are sold through overlapping, though not co-extensive, channels of trade.  Skechers denies the remaining allegations of Paragraph 35.

36.     Skechers denies the allegations of Paragraph 36.

37.     Skechers denies the allegations of Paragraph 37.

38.     Skechers admits that the footwear material used to manufacture the Skechers Products identified in the Complaint is called "nano lite"; admits that it offers a line of decorative shoe charms named "Cali Bits"; admits that adjectives used to describe its nano lite material include "anti-microbial," "odor resistant," "comfortable" and "lightweight," but denies that use of any of these terms is improper or evidence of bad faith.  Skechers denies the remaining allegations of Paragraph 38.

39.     Skechers admits that Crocs and Jibbitz have notified Skechers of their alleged "intellectual property rights," but denies that Crocs or Jibbitz have "intellectual

property rights" in the subject of any such notifications.  Skechers denies the remaining allegations of Paragraph 39.

40.    Skechers admits that it has undertaken a mobile advertising campaign aimed at Boulder, Colorado; admits that Niwot, Colorado (near Boulder) is the location of Crocs' headquarters and principal place of business; admits the excerpt cited is from the press release; and admits that a complete copy of the press release is attached to the Complaint as Exhibit D.  Skechers denies the remaining allegations of Paragraph 40.

41.    Skechers denies that there is any Crocs trade dress and further denies the remaining allegations of Paragraph 41.

## FIRST CLAIM FOR RELIEF
Infringement of the '789 Patent – 35 U.S.C. § 1, *et seq.*

42.    Skechers hereby incorporates its responses to each of the preceding paragraphs as if fully set forth herein.

43.    Skechers denies the allegations of Paragraph 43.

44.    Skechers denies the allegations of Paragraph 44.

45.    Skechers denies the allegations of Paragraph 45.

46.    Skechers denies the allegations of Paragraph 46.

47.    Skechers denies the allegations of Paragraph 47.

## SECOND CLAIM FOR RELIEF
Infringement of the '208 Patent – 35 U.S.C. § 1, *et seq.*

48.     Skechers hereby incorporates its responses to each of the preceding paragraphs as if fully set forth herein.

49.     Skechers denies the allegations of Paragraph 49.

50.     Skechers denies the allegations of Paragraph 50.

51.     Skechers denies the allegations of Paragraph 51.

52.     Skechers denies the allegations of Paragraph 52.

53.     Skechers denies the allegations of Paragraph 53.

## THIRD CLAIM FOR RELIEF
Infringement of the '207 Patent – 35 U.S.C. § 1, *et seq.*

54.     Skechers hereby incorporates each of the preceding paragraphs as if fully set forth herein.

55.     Skechers denies the allegations of Paragraph 55.

56.     Skechers denies the allegations of Paragraph 56.

57.     Skechers denies the allegations of Paragraph 57.

58.     Skechers denies the allegations of Paragraph 58.

59.     Skechers denies the allegations of Paragraph 59.

**FOURTH CLAIM FOR RELIEF**
Federal Unfair Competition as to the Crocs Logo – 15 U.S.C. § 1125(a)

60.     Skechers hereby incorporates each of its responses to the preceding paragraphs as if fully set forth herein.

61.     Skechers is without information sufficient to form a belief as to the truth of the allegations of Paragraph 61 and therefore denies the same.

62.     Skechers denies the allegations of Paragraph 62.

63.     Skechers is without information sufficient to form a belief as to what suggests or describes any ingredient or characteristic of Crocs' goods and services, but, on information and belief, Crocs selected the crocodile logo because (according to Crocs' website) crocodiles are "equally good in land and water and live for a very long time," which Crocs believes to be a "great description" of their shoes. Skechers denies the remaining allegations of Paragraph 63.

64.     Skechers denies the allegations of Paragraph 64.

65.     Skechers admits that it is not authorized to use the Crocs Logo or any mark confusingly similar or that in any way represents or implies that Skechers and/or its goods are in any way associated with Crocs, but denies that it is doing, or has ever done, any of these acts alleged.

66.     Skechers denies the allegations of Paragraph 66.

67.     Skechers denies the allegations of Paragraph 67.

## **FIFTH CLAIM FOR RELIEF**
Trade Dress Infringement – 15 U.S.C. § 1125(a)

68.     Skechers hereby incorporates each of its responses to the preceding paragraphs as if fully set forth herein.

69.     Skechers denies the allegations of Paragraph 69.

70.     Skechers denies the allegations of Paragraph 70.

71.     Skechers denies the allegations of Paragraph 71.

72.     Skechers admits that Crocs has not authorized, licensed or otherwise permitted Skechers to use the alleged Crocs Trade Dress, but denies that it is doing, or has ever done, any act which would require such authorization, license or permission. Skechers denies the remaining allegations of Paragraph 72.

73.     Skechers denies the allegations of Paragraph 73.

## **SIXTH CLAIM FOR RELIEF**
Common Law Unfair Competition

74.     Skechers incorporates each of its responses to the preceding paragraphs as if fully set forth herein.

75.     Skechers denies the allegations of Paragraph 75.

76.     Skechers denies the allegations of Paragraph 76.

77.     Skechers denies the allegations of Paragraph 77.

78.     Skechers denies the allegations of Paragraph 78.

## SEVENTH CLAIM FOR RELIEF
Unfair and Deceptive Trade Practices – Colo. Rev. Stat. §§ 6-1-101, *et seq.*

79.     Skechers hereby incorporates its responses to each of the preceding paragraphs as if fully set forth herein.

80.     Skechers denies the allegations of Paragraph 80.

81.     Skechers denies the allegations of Paragraph 81.

82.     Skechers denies the allegations of Paragraph 82.

83.     Skechers denies the allegations of Paragraph 83.

84.     Skechers denies the allegations of Paragraph 84.

85.     Skechers denies the allegations of Paragraph 85.

## AFFIRMATIVE DEFENSES OF SKECHERS U.S.A., INC.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

86.     Crocs' Complaint, and each purported claim for relief contained therein, fails to state a claim on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

87.     Upon information and belief, Crocs' claims are barred, in whole or in part, by Crocs' delay and the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE
#### (Estoppel)

88.     Upon information and belief, Crocs' claims are barred, in whole or in part, by the

doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE
#### (Unclean Hands)

89.     Crocs' claims for relief are barred by Crocs' unclean hands.

### FIFTH AFFIRMATIVE DEFENSE
#### (Invalidity of Design Patents)

90.     Each of the patents-in-suit is invalid for failure to comply with one or more of the

conditions and requirements of patentability set forth in the patent laws of the

United States, 35 U.S.C. §§ 101, *et seq.*, including without limitation 35 U.S.C.

§§ 102, 103, 112, 119, 171, 172 and 282.

### SIXTH AFFIRMATIVE DEFENSE
#### (Failure to Mark)

91.     Upon information and belief, Crocs or its licensee(s), or both, failed to follow the

marking requirements set forth in 35 U.S.C. § 287.  Crocs therefore cannot recover

damages for alleged infringement of its patents for any period prior to the filing of

this lawsuit.

### SEVENTH AFFIRMATIVE DEFENSE
#### (Inequitable Conduct)

92.     Patents-in-suit are unenforceable by reason of inequitable conduct, due to the

actions and omissions of Crocs, its representatives, putative inventors, and/or other

persons substantively involved in the prosecution of the applications for those

patents and the patent applications to which they claim priority.  Crocs' inequitable conduct is detailed below.

93.     On information and belief, instead of developing a design of its own, Crocs copied a specific prior art design that was created no later than 2000 by an Italian designer. As early as 2001, that Italian shoe design was marketed in the U.S. as the "Aqua Clog" and/or the "Waldies clog."  Crocs' sole "innovation" was to add a commonplace strap to this prior art design.  Indeed, initially Crocs produced its shoes by taking Aqua Clogs purchased from a third party manufacturer and modifying them by riveting a conventional strap to them.  Crocs started selling these modified Aqua Clogs in July 2002.



Aqua Clog 2000



Crocs Clog 2002

94.     In June 2003, Crocs filed utility patent applications purporting to cover functional elements of its shoes, including the application that became U.S. Patent No. 6,993,858 ("the '858 patent"), priority to which is claimed by one of the design patents-in-suit.  On information and belief, in prosecuting these utility patent applications, Crocs concealed from the PTO the highly material fact that its supposed inventions were nothing more than the Aqua Clog shoe (which Crocs purchased from the same manufacturer that sold shoes to Waldies), to which Crocs riveted a prior art strap.  Crocs intentionally misled the PTO as to the prior existence of the Aqua Clog and Waldies shoes (as well as the fact that such shoes had been on sale in the United States more than a year prior to the filing of its patent applications) by disclosing only a web page printout of an advertisement for the prior art Waldies clog, bearing (1) a small and low-quality picture of the prior art clog, and (2) the misleading date of August 4, 2003, which is after the patent filing date and years after the date that Crocs knew the Aqua Clog shoe was known and had been sold to the public.  The only purported disclosure of either the Aqua Clog or Waldies by Crocs during prosecution of these patents is reproduced below (emphasis added):



95.     Crocs and its patent attorneys knew, or should have known, that the PTO would not

consider this document as "prior art" to the '858 application because the date on the

face of the document, August 4, 2003, is later than the May 23, 2003 priority date

of that application, unless Crocs explicitly provided an earlier date.  On information

and belief, Crocs and its patent attorneys knew that this incomplete and deceptive

information regarding the Waldies shoes would deceive the PTO and they intended

such deception in order to obtain the '858 patent.

96.     Crocs also failed to disclose other highly material prior art references to the PTO in connection with the examination of the '858 patent, including U.S. Patent No. 6,439,536.  On information and belief, Crocs was aware of this prior art reference because it had been brought to Crocs' attention during prosecution of a related international patent application claiming priority to the '858 patent application. Crocs failed to disclose these references with an intent to deceive the PTO and obtain the '858 patent.

97.     A number of patents and applications came out of these original deceptive filings, including  U.S. Patent No. D 517,789 ("the '789 patent"), filed in May 2004, one of the three design patents-in-suit.  A drawing from the '789 patent is depicted below.



Crocs'  '789 Design Patent

The '789 patent is related to and claims priority from the '858 utility patent.  Crocs' inequitable conduct with respect to the '858 patent renders the '789 patent invalid and unenforceable.

98.     On information and belief, Crocs continued the same pattern of misconduct during the prosecution of the '789 patent.  It again failed to disclose the Aqua Clog and U.S. Patent No. 6,439,536 and engaged in the same deception with respect to the Waldies clog.  Moreover, during examination of the '789 patent, Crocs also failed to disclose U.S. Patent No. 2,897,566, another highly material reference that had been

called to Crocs' attention during the examination of a prior patent to which the '789 claims priority.  Crocs understood that all of these prior art references were highly material and failed to disclose these references with an intent to deceive the PTO and obtain the '789 patent.

99.   On information and belief, Crocs additionally failed to disclose to the PTO that the only new feature of its design – the supposedly "ornamental" strap – was primarily utilitarian or functional, as evidenced by Crocs' own statements to the PTO made in connection with its '858 and other utility patent applications.  Crocs also failed to disclose to the examiner of the '789 patent (who was not the examiner of Crocs' utility patent applications) the rejections, and Crocs' responses, in the prosecution of the '858 patent and Crocs' related utility patents.  This information was material to prosecution of the '789 patent because it indicated the functional character of Crocs' alleged design.  This material information was withheld from the '789 examiner with an intent to deceive.

100.   On information and belief, Crocs further made an improper and false claim of priority with respect to the '789 patent.  Specifically, the '789 design patent claims priority to the '858 utility patent.  Crocs knew that this claim of priority was improper because the '858 patent application, as originally filed, did not contain a figure that would support a claim of priority for the design claimed in the '789 patent.  Crocs did not add the figure necessary to support the claim of priority for the '789 patent until well after the filing date of the '858 patent.  Crocs made this false priority claim intentionally because absent the falsely claimed earlier priority date, the '789 patent application would have been barred under 35 U.S.C. § 102(b) by Crocs' first sale, more than a year before the filing date of the '789 patent, of a modified Aqua Clog to which Crocs riveted a prior art strap.  Crocs' prior sale of the modified Aqua Clog to which it riveted a prior art strap took place at a Florida

boat show in July 2002.  The actual filing date of the '789 patent application (without benefit of the improper priority claim) was not until May 28, 2004.

101.    On information and belief, in withholding from the PTO the aforementioned information in connection with the prosecution of the '789 patent, Crocs was attempting to deceive the PTO so that it could obtain a patent and exclude others from using functional features and prior art designs.  The withheld information was highly material.  The '789 patent is thus unenforceable.

102.    On information and belief, Crocs also engaged in a similar pattern of misconduct with respect to U.S. Patent No. D 564,207 ("the '207 patent"), another one of the three design patents-in-suit.  Specifically, Crocs was aware of highly material prior art, yet intentionally failed to disclose this prior art to the PTO in connection with the examination of the '207 design patent, including but not limited to U.S. Patent No. 2,897,566 (discussed above) and U.S. Patent No. Des. 73,450, which had been brought to Crocs' attention during the examination of earlier Crocs' patent applications.  Crocs failed to disclose these references with an intent to deceive the PTO and obtain the '207 patent.  As a result of Crocs' inequitable conduct, the '207 patent is unenforceable.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Misuse of Trademark and Unfair Competition Law/**
**Fair Use of Descriptive Terms)**

103.    Crocs' claim that use of generic terminology is evidence of infringement or unfair competition, including use of such terms as "microbial," "odor resistant," "comfortable" and "lightweight" for goods genuinely exhibiting these properties, is barred on the basis that such terms are in the public domain and available to all.

104.    Crocs has unclean hands and/or has misused trademark and unfair competition law by alleging that use of generic terminology, including "microbial," "odor resistant," "comfortable" and "lightweight" for goods genuinely exhibiting these properties, is evidence of infringement or is otherwise unfair or improper.

105.    Skechers' use of generic terminology, such as "microbial," "odor resistant," "comfortable" and "lightweight" for shoes exhibiting these properties, is fair non-trademark use that is not actionable.

## NINTH AFFIRMATIVE DEFENSE
### (Misuse of Trade Dress Law/Fair Use)

106.    Crocs has unclean hands and/or has misused trade dress and unfair competition law by attempting to claim trade dress rights in unprotectable features of its shoes that are not protected by trade dress law and, absent a utility patent, may be fairly used by competitors.

## COUNTERCLAIMS OF SKECHERS U.S.A., INC.

107.    Skechers brings these Counterclaims against Crocs pursuant to Rule 13 of the Federal Rules of Civil Procedure and seeks determination that Crocs' asserted patents are invalid, unenforceable and un-infringed, that Crocs' trade dress, trademark and unfair competition claims are similarly meritless, and that Crocs has engaged in a pattern of deceptive conduct with the public, its competitors, and the PTO.

### FIRST COUNTERCLAIM
### DECLARATORY JUDGMENT OF INVALIDITY, NON-INFRINGEMENT
### AND UNENFORCEABILITY OF D 515,789

108.   Skechers incorporates by reference Paragraphs 1-107 above as if fully set forth herein.

109.   This is a cause of action for declaratory judgment of invalidity, non-infringement, and unenforceability of the claim of U.S. Patent No. D 517,789 ("the '789 patent"). This Court has subject matter over this cause of action pursuant to 28 U.S.C. §§ 1131, 1138(a), 2201, and 2202.

110.   A justiciable case or actual controversy has arisen and exists between Skechers and Crocs because in the Complaint filed in the present action, Crocs has accused Skechers of infringing the '789 patent, and Crocs contends that the '789 patent is valid.

111.   In a recent trial, In the Matter of Certain Foam Footwear, No. 337-TA-567, the International Trade Commission ("ITC") determined that the claim scope of the '789 design patent is far narrower than Crocs had asserted.  (*See* Commission Opinion, July 25, 2008, at http://edisweb.usitc.gov/edismirror/337-567/Violation/306060/374424/56b/9ce1ab.pdf.)  The ITC found that the drawings issued with the '789 patent are only infringed by a design in which:  (1) the strap is of uniform thickness and extends to the heel of the shoe; (2) the holes in the "upper" are round, and placed in a systematic pattern; and (3) the ventilation holes are evenly spaced around the front portion of the upper's sidewall.  No Skechers shoe has these features.  Moreover, the ITC found that none of the following third-party shoes infringed the '789 patent:







Original Beach DAWGS      Revised Beach DAWGS      Men's Big DAWGS









Komodo      Holey Soles Explorer      Waldies AT      Airwalk Compel

112.   In invalidating Crocs' '858 utility patent (from which the '789 design patent claims

priority), the ITC also found that Crocs' heel strap was not novel, concluding that

"the use of straps in shoes similar to the patented shoe was well known in the prior

art."  The ITC found that the Administrative Law Judge ("ALJ") had "properly

concluded that the sole remaining difference between the prior art and the claimed

['858] invention is the use of foam for the strap."  Noting that "foam straps were

known in the prior art," it concluded:  "We agree with the ALJ that Crocs' invention

is merely a combination of familiar elements according to known methods that

yield predictable results."  The ITC elected not to reach the question of whether

Crocs' patents were unenforceable due to inequitable conduct relating to, *inter alia,*

the concealment of the Aqua Clog and Waldies prior art, because the ITC had

already found that the '858 utility patent was invalid and that the '789 design patent

failed to cover any of the accused designs before it.

113.   Skechers has not infringed, willfully or otherwise, and is not now infringing the

claim of the '789 patent pursuant to 35 U.S.C. §§ 281 and 289.

114.   The '789 patent is invalid and/or unenforceable for failure to comply with one or

more provisions of the Patent Laws of the United States of America, Title 35,

United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 119, 171, 172 and 282.  The '789 patent is unenforceable for inequitable conduct as detailed in the Seventh Affirmative Defense above.

## SECOND COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY, NON-INFRINGEMENT
## AND UNENFORCEABILITY OF D 564,208

115.    Skechers incorporates by reference Paragraphs 1-114 above as if fully set forth herein.

116.    This is a cause of action for declaratory judgment of invalidity, non-infringement, and unenforceability of the claim of U.S. Patent No. D 564,208 ("the '208 patent"). This Court has subject matter over this cause of action pursuant to 28 U.S.C. §§ 1131, 1138(a), 2201, and 2202.

117.    A justiciable case or actual controversy has arisen and exists between Skechers and Crocs because in the Complaint filed in the present action, Crocs has accused Skechers of infringing the '208 patent, and Crocs contends that the '208 patent is valid.

118.    On information and belief, the '208 patent, which was filed in January 2006, combines two classic prior art shoe design elements, a cap toe and ridges along the shoe's upper.  As shown in the following drawing from the '208 patent, the rest of the clog, including the strap, is excluded from the claim of the '208 patent because the clog and strap are shown in dashed lines:



Crocs' '208 Design Patent

Cap toe shoe designs are functional prior art dating back at least to the Edwardian era, and long ago migrated to casual shoes. Ridges are likewise borrowed from another piece of prior art, the iconic L.L. Bean Maine Hunting Shoe, first introduced in the early 1900's.

119. Skechers has not infringed, willfully or otherwise, and is not now infringing the claim of the '208 patent pursuant to 35 U.S.C. §§ 281 and 289.

120. The '208 patent is invalid and/or unenforceable for failure to comply with one or more provisions of the Patent Laws of the United States of America, Title 35, United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 119, 171, 172 and 282.

## THIRD COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY, NON-INFRINGEMENT AND UNENFORCEABILITY OF D 564,207

121. Skechers incorporates by reference Paragraphs 1-120 above as if fully set forth herein.

122. This is a cause of action for declaratory judgment of invalidity, non-infringement, and unenforceability of the claim of U.S. Patent No. D 564,207 ("the '207 patent").

This Court has subject matter over this cause of action pursuant to 28 U.S.C. §§ 1131, 1138(a), 2201, and 2202.

123.   A justiciable case or actual controversy has arisen and exists between Skechers and Crocs because in the Complaint filed in the present action, Crocs has accused Skechers of infringing the '207 patent, and Crocs contends that the '207 patent is valid.

124.   On information and belief, the '207 design patent, which was filed in March 2006, claims the commonplace "Mary Jane" shoe design.



Crocs'  '207 Design Patent

The classic "Mary Jane" design gained popularity from the character Mary Jane who appeared in the Buster Brown comic strip, first published in 1902.  As Crocs' own advertisements acknowledge, Mary Janes are an "ever popular" "classic."

125.   Skechers has not infringed and is not now infringing the claim of the '207 patent.

126.   The '207 patent is invalid and/or unenforceable for failure to comply with one or more provisions of the Patent Laws of the United States of America, Title 35, United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 119, 171, 172 and 282.  The '207 patent is unenforceable for inequitable conduct as detailed in the Seventh Affirmative Defense.

## FOURTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE CROCS LOGO

127.    Skechers incorporates by reference Paragraphs 1-126 above as if fully set forth herein.

128.    This is a cause of action for declaratory judgment of non-infringement of Crocs Logo by Skechers' use of its CALI BEAR Logo. This Court has subject matter over this cause of action pursuant to 28 U.S.C. §§ 1131, 1138(a), 2201, and 2202.

129.    A justiciable case or actual controversy has arisen and exists between Skechers and Crocs because in the Complaint filed in the present action, Crocs has alleged Skechers' use of its CALI BEAR Logo (referred to by Crocs as Skechers' animated bear logo) on foam clog footwear and accessories for foam clog footwear infringes Crocs' purported trademark rights in its Crocs Logo (which depicts a crocodile):

        

Skechers' CALI BEAR Logo®        Crocs Logo

130.    Crocs has also alleged that this conduct constitutes unfair competition and violates the Colorado Consumer Protection Act.

131.    Skechers is an award-winning global leader in the footwear industry. Skechers designs, develops and markets lifestyle footwear that appeals to men, women and children. Currently Skechers has over 2,000 different styles and sells tens of millions of pairs of its shoes each year.

132.    Skechers has achieved tremendous recognition and success. Its products are sold through third party department and specialty stores across the country, as well as through Skechers' own network of company-owned and -operated retail stores. In

the United States alone, Skechers has approximately 185 company-owned and -operated retail stores.  Skechers also sells its products outside the U.S. and in over 100 countries and territories.

133.    Skechers sold in excess of $1 billion in branded footwear in 2007 in the United States through wholesale, retail and e-commerce distribution.

134.    As part of its business, Skechers has developed a family of well-known trademarks and logos to identify it as the source of its products.  This family of trademarks includes, *inter alia*, the SKECHERS mark, which has been continuously used by Skechers since 1993.  Other well-known marks in Skechers' family of marks include Skechers' stylized "S" mark, the SKX mark (which is also Skechers' New York Stock Exchange symbol), Skechers' CALI GEAR mark, and the CALI BEAR mark and logo.  Skechers makes significant expenditures to promote, advertise and market its brands (*i.e.*, its unique and proprietary trademarks and logos) and to prominently distinguish its brands from competitors.

135.    The PTO registered Skechers' CALI BEAR Logo on August 19, 2008 for "footwear," U.S. Registration No. 3,488,573.  This registration was not opposed by Crocs.

136.    Skechers' use of its registered CALI BEAR Logo serves to identify Skechers as the source of its shoes.  As distinguished from the logo itself, the placement (*i.e.*, specific location) of the logo on the rivet of certain shoes is functional, as is Crocs' placement of its unregistered logo.

137.    The source identifying function of the CALI BEAR Logo is further enhanced by Skechers' marketing campaigns featuring the Cali Bear character.



138.   There is no likelihood of confusion between Skechers' CALI BEAR Logo on foam clog footwear and accessories for foam clog footwear and the Crocs Logo and Skechers' use of its CALI BEAR Logo does not constitute unfair competition or violate the Colorado Consumer Protection Act.  Crocs has no exclusive claim to animal logos, nor does it have the right to bar competitors from clearly marking their own goods, in obvious places, with logos that distinguish their goods and indicate their origins.

### FIFTH COUNTERCLAIM
### DECLARATORY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT OF CROCS' ALLEGED TRADE DRESS

139.   Skechers incorporates by reference Paragraphs 1-138 above as if fully set forth herein.

140.   This is a cause of action for declaratory judgment that Crocs' alleged trade dress is not valid or protectable and that Skechers' "Gossips," "Waterbugs," "Trinkets," "Gypsies," "Low Tide," and "Wooly Bullies" or any other footwear do not infringe Crocs' purported trade dress rights.  This Court has subject matter over this cause of action pursuant to 28 U.S.C. §§ 1131, 1138(a), 2201, and 2202.

141.   A justiciable case or actual controversy has arisen and exists between Skechers and Crocs because in the Complaint filed in the present action, Crocs has alleged that it has a valid and protectable trade dress and that Skechers' footwear, including but

not limited to "Gossips," "Waterbugs," "Trinkets," "Gypsies," "Low Tide," and "Wooly Bullies" footwear, infringe Crocs' purported trade dress rights.

142.    Although Crocs initially asserted trade dress claims in the ITC proceeding, the ITC did not reach those claims because Crocs withdrew them before trial.

143.    Crocs' alleged trade dress is functional and therefore is not protectable as trade dress.

144.    Crocs has consistently touted the functionality of its shoe designs – including many of the features identified in Crocs' complaint as "specific elements" of Crocs' asserted trade dress – to the public, the PTO, and the ITC:

 



Indeed, Crocs' own advertising touts that Crocs is "functional footwear with a casual feel."

145.   Crocs even claims "a unique recognizable outline" derived from "the distinctively gentle slope of the upper:"



Aqua Clog

But since the earliest days of shoes, shoe uppers have had gentle slopes for the simple reason that human feet do:



146.   Even assuming Crocs could establish non-functionality, Crocs' alleged trade dress is not inherently distinctive as a matter of law and has not acquired secondary meaning in the minds of consumers as indicating a single source, affiliation, or sponsorship.

147.   Crocs' alleged trade dress does not serve as a source-indicator due to the prevalence of third-party footwear exhibiting features claimed by Crocs to indicate source.

148.   Because Crocs does not have a valid and protectable trade dress, Skechers' manufacture, distribution and sale of its shoes cannot constitute unfair competition or infringement of Crocs' trade dress rights.

149.   Skechers' prominent marking of its shoes with its own well-known trademarks precludes any likelihood of confusion as to the source or other affiliation of Skechers' shoes.

150.    Even if Crocs does have some valid trade dress interest in its shoes, Skechers'
        footwear, including but not limited to Skechers' "Gossips," "Waterbugs,"
        "Trinkets," "Gypsies," "Low Tide," and "Wooly Bullies" footwear, does not
        infringe Crocs' purported trade dress rights.

151.    To the extent that any similarities exist between Skechers and Crocs shoes, those
        similarities are based on functionality and/or are common design elements used by
        third parties such that there is no source-identification arising therefrom.

## SIXTH COUNTERCLAIM
## FALSE OR MISLEADING DESCRIPTIONS AND REPRESENTATIONS
## IN VIOLATION OF 15 U.S.C. § 1125(a)

152.    Skechers incorporates by reference Paragraphs 1-151 above as if fully set forth
        herein.

153.    This is a cause of action for false or misleading descriptions and representations
        under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, as amended.  This Court has
        subject matter jurisdiction over this cause of action pursuant to 15 U.S.C. § 1121
        and 28 U.S.C. §§ 1331 and 1338(a).

154.    Some of Skechers' approximately 2,000 shoe models compete with those offered by
        Crocs.

155.    In advertising and promoting its shoes in commerce, Crocs has made false or
        misleading statements concerning the nature, characteristics, qualities, and origin of
        its shoes.

156.    On information and belief, Crocs has misled consumers regarding its limited role in
        the design of its shoes.  Crocs has made false or misleading statements regarding its

role in the creation of its original Beach model shoe, and the development of the closed cell resin from which its shoes are made, as well as its rights therein.

157.     Among other things, Crocs has repeatedly represented to consumers that the material from which its shoes are made is a "patented closed cell resin (PCCR)." Crocs calls this material its "patented Croslite™ PCCR material."

158.     This closed cell resin is described by Crocs as a "revolutionary material" that "represents a substantial innovation in footwear comfort and functionality."  In marketing its shoes, Crocs has repeatedly touted the benefits of this material as a key selling feature of its shoes.

159.     On information and belief, the closed cell resin material used by Crocs is not patented and Crocs has no patent rights in this material.

160.     On information and belief, Crocs' statements suggesting that its shoes are made with a "patented" material are false and misleading and have deceived consumers about matters that are material to purchasing decisions.  Among other things, such statements deceived consumers into believing that the material used to make Crocs' shoes is a novel (or in Crocs' words "revolutionary") invention and that Crocs has the exclusive right to sell shoes made of this material.  As Crocs has always touted the benefits of this material as a key selling feature of its shoes, Crocs' false and misleading statements were material to consumers.  Consumers were misled to believe that Crocs had a patent on the material and that the materials used by other shoe companies to produce molded foam shoes were inferior as they did not provide the same patented benefits as Crocs' shoes or else were infringing Crocs' intellectual property.

161.    Crocs' false or misleading statements are in violation of Section 43(a) of the
Lanham Act, 15 U.S.C. § 1125(a).

162.    On information and belief, Crocs acted with either knowledge of the false or
misleading nature of its statements, or with reckless disregard for the false or
misleading nature of the statements.

163.    The nature of Crocs' acts makes this an exceptional case under 15 U.S.C. § 1117(a).

164.    As a result of Crocs' false or misleading statements, Skechers has suffered and is
suffering irreparable harm.

## SEVENTH COUNTERCLAIM
## VIOLATION OF 35 U.S.C. § 292(a)

165.    Skechers incorporates by reference Paragraphs 1-164 above as if fully set forth
herein.

166.    This is a cause of action for false marking in violation of 35 U.S.C. § 292.  This
court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C.
§ 1331.

167.    On information and belief, in violation of 35 U.S.C. § 292(a), Crocs has used in
advertising in connection with an unpatented article (namely, Croslite, the closed
cell resin used to make Crocs shoes) the word "patented" and described the same as
patented, or the like, for the purpose of deceiving the public.

## PRAYER FOR RELIEF

WHEREFORE, Skechers prays for judgment as follows:

A.      For dismissal of Crocs' Complaint with prejudice, and that Crocs shall take nothing against Skechers by the Complaint;

B.      That the Court enter judgment against Crocs in favor of Skechers in all respects;

C.      For a judicial determination and declaration that U.S. Patent No. D 515,789 and each and every claim thereof, is invalid, unenforceable, and not infringed by Skechers;

D.      For a judicial determination and declaration that U.S. Patent No. D 564,208 and each and every claim thereof, is invalid, unenforceable, and not infringed by Skechers;

E.      For a judicial determination and declaration that U.S. Patent No. D 564,207 and each and every claim thereof, is invalid, unenforceable, and not infringed by Skechers;

F.      For a judicial determination and declaration that the Crocs Logo is not infringed by Skechers' CALI BEAR Logo;

G.      For a judicial determination and declaration that Crocs' alleged trade dress is invalid and not protectable due to functionality and/or lack of distinctiveness;

H.      For a judicial determination and declaration that Skechers' footwear does not infringe Crocs' purported trade dress;

I.      For judgment that Crocs has engaged in false and/or misleading representations in violation of 15 U.S.C. § 1125(a);

J.      That Crocs and its present and future directors, officers, agents, servants, employees, parents, subsidiaries, affiliates, assigns, and related companies, and all those persons in active concert or participation with any of them, be permanently enjoined from referring to the resin from which Crocs shoes are manufactured as "patented" or from otherwise making false or

misleading statements regarding the origin of Crocs shoes or Crocs' intellectual property rights thereto;

K.      That an accounting be directed to determine Crocs' profits resulting from its false and/or misleading statements and that Skechers be awarded such profits, increased as the Court finds to be just under the circumstances of this case, including willfulness;

L.      That Skechers be awarded compensatory damages according to proof;

M.      For judgment that Crocs has violated 35 U.S.C. § 292;

N.      For a levy against Crocs of a fine of $500 for each and every offense in violation of 35 U.S.C. § 292(a), one-half to be paid to Skechers and the other half to the use of the United States, pursuant to 35 U.S.C. § 292(b);

O.      That the Court determine that this is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117(a), and award attorneys' fees and costs to Skechers in this action; and

P.      For such other and further relief as the Court deems just and equitable.

## <u>JURY DEMAND</u>

Defendant and Counter-Claimant Skechers hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 25 day of August, 2008.

s/James M. Lyons

ROTHGERBER JOHNSON & LYONS LLP
James M. Lyons, Esq.
Kenneth F. Rossman, IV, Esq.
One Taber Center
1200 Seventeenth Street, Suite 3000
Denver, CO 80202-5855
Main Tel.:        (303) 623-9000
Main Fax:        (303) 623-9222

E-mails:        jlyons@rothgerber.com
                krossman@rothgerber.com

-and-

IRELL & MANELLA LLP
Morgan Chu, Esq.
Jonathan H. Steinberg, Esq.
Jane Shay Wald, Esq.
Mary Ann Novak, Esq.
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
Main Tel.:        (310) 277-1010
Main Fax:        (310) 203-7199

E-mails:        mchu@irell.com
                jsteinberg@irell.com
                jwald@irell.com
                mnovak@irell.com

Attorneys for Defendant and Counter-
Claimant SKECHERS U.S.A., Inc.

Defendant and Counter-Claimant's
Address:

228 Manhattan Beach Blvd.
Manhattan Beach, California  90266

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2008, I presented the foregoing to the

Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification

of such filing to the following:

**Jared Barrett Briant**
Faegre & Benson, LLP-Boulder
1900 Fifteenth Street
Boulder, CO 80302
Email: jbriant@faegre.com

**Marc C. Levy**
Faegre & Benson, LLP-Denver
1700 Lincoln Street
Wells Fargo Center #3200
Denver, CO 80203-4532
Email: MLevy@faegre.com

**Natalie Marie Hanlon-Leh**
Faegre & Benson, LLP-Denver
1700 Lincoln Street
Wells Fargo Center #3200
Denver, CO 80203-4532
Email: nhanlon-leh@faegre.com

*s/James M. Lyons*
James M. Lyons